IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HONG JAE KIM § | | |
| (BOP Register No. 65554-112), § | | |
|  § | | |
| Movant, § | | |
|  § | | |
| V. § | No. 3:16-cv-3262-B-BN | |
|  § | | |
| UNITED STATES OF AMERICA, § | | |
|  § | | |
| Respondent. § | | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE <u>UNITED STATES MAGISTRATE JUDGE</u>

Movant Hong Jae Kim, a federal prisoner, proceeding *pro se*, has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. *See* Dkt. No. 2. This action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Jane J. Boyle.

Kim claims – in ten grounds for relief – that he received ineffective assistance of counsel from his three lawyers.

Because all of his claims lack merit, the undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should deny Kim's Section 2255 motion with prejudice.

### Applicable Background

Beginning in 2006, Kim engaged in a sophisticated conspiracy designed to defraud mortgage lenders and to launder the illegal proceeds. *See United States v. Kim*,

3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 5. The government began investigating Kim in 2009, *see United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 28-1 at 5, and he hired attorney Roger F. Joyner ("Joyner") – with whom he had worked in the past – to represent him in that investigation, *see* Dkt. No. 10 at 6.

In February 2013, Kim agreed to plead guilty to a felony information, and he signed a plea agreement and factual resume admitting that he had conspired to engage in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. §§ 1956(h) & 1957. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. Nos. 1, 3, 4, & 5. But before he was arraigned, Kim fled to California, and, when he was arrested there six weeks later, he told federal investigators that he fled to avoid being removed from the United States after he served his prison sentence. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. Nos. 11 & 28-1 at 13 ("After being read his *Miranda* rights, [Kim] informed Agent Lanier that he fled the Northern District of Texas because he knew he would be deported after serving his sentence for the instance offense and he did not want to be deported."); *see also United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 70 at 61 ("I asked [Kim] why he ran, and he told me because he didn't want to be deported.").

After Kim was returned to the Northern District of Texas, he was re-arraigned, and the Court accepted his guilty plea. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. Nos. 21 & 24.

Before he was sentenced, however, Kim fired Joyner and hired attorney Christopher K. Woodward ("Woodward") to represent him at sentencing. *See United*

*States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 27. Kim – more than six months later – moved the Court to permit him to proceed *pro se* at sentencing. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 41. Instead, the Court appointed attorney Eun-Hyuk Yi ("Yi") to represent Kim at sentencing. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 56.

Kim was sentenced to ten years in prison, with a one-year term of supervised release, and ordered to pay $1,795,125.00 in restitution. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 60. And his conviction and sentence were affirmed on direct appeal. *See United States v. Hong Jae Kim*, 623 F. App'x 263, 264 (5th Cir. 2015) (per curiam).

Kim now challenges his conviction under Section 2255, claiming that he received ineffective assistance from Joyner, Woodward, and Yi. Although Kim does not present his claims in chronological order, the undersigned will address them that way.

As explained below, there is no merit to Kim's claims that his conviction must be set aside because Joyner was ineffective during the investigation or at the plea stage (claims (1) and (4)-(10)) or that Woodward or Yi were ineffective in failing to move the Court to allow Kim to withdraw his guilty plea (claims (2) and (3)).

## Legal Standards and Analysis

The Court reviews claims of ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To warrant post-conviction relief, a movant must show his attorney's performance fell

below an objective standard of reasonableness, *see id.* at 687-88, and that he was prejudiced by that substandard performance, *see id.* at 687, 692.

To establish deficient performance, the movant must show that his counsel committed an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. A movant must offer more than "conclusory allegations" of his counsel's ineffective assistance. *See Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance are insufficient to raise a constitutional issue"); *see also United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005) (same).

To demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

As Kim pleaded guilty, to establish prejudice, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This assessment

> will depend in part on a prediction of what the outcome of a trial might have been. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. That assessment, in turn, will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial.

*United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014) (quoting *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (in turn citing *Hill*, 474 U.S. at 56-58)); *see also del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007) (a movant "need not prove by a preponderance that the result of the proceedings in the trial court would have been different, but he must sufficiently undermine confidence in the outcome to illustrate that counsel's deficient performance caused the outcome of the proceeding to be unreliable or the proceeding to be fundamentally unfair" (citing *Armstead*, 37 F.3d at 207)).

<u>Joyner's performance</u>

Kim claims that Joyner provided ineffective assistance throughout the government's investigation:

> During the course of [the government's] investigations Attorney Joyner encouraged [Kim] to participate in various interviews by various law

> enforcement agents. Yet Attorney Joyner failed to protect [Kim's] interest by allowing [him] to admit guilt without being read his rights, or being given immunity. Attorney Joyner allowed these interviews to be used against [Kim], and used as a basis for the charges in the case at bar.
>
> At no time did Attorney Joyner object to any lines of questioning, or advise [Kim] not to answer a question. Attorney Joyner did nothing to protect [Kim's] interests. Attorney Joyner's actions show he was acting more as an agent of the Government, than an attorney [for Kim].

Dkt. No. 2 at 15.

Kim's allegations are fatally vague and conclusory. Kim faced state and federal charges for the crimes at issue here and others and apparently engaged in numerous proffer sessions in an attempt to limit his criminal exposure for his federal and state crimes. *See* Dkt. No. 10 at 7 ("Kim told me that ... he had experience in cooperating in another investigation with a Special Agent from Immigration Services."); *see also id.* at 6 ("Prior to being charged in the Federal case [Kim] was arrested along with an acquaintance for false statement for property of 20k credit in state care. Those charges were un-related to the Federal charges."). But in his allegations against Joyner here, Kim offers no details about any proffer meeting between him and government investigators regarding the crimes at issue here; Kim fails to identify when the "various interviews with various law enforcement agents" took place and what was discussed – including what crime was at issue, what questions he was asked, which he chose to answer, or how he answered them. Without those facts, Kim cannot carry his burden to show that Joyner performed deficiently during the proffer session(s).

Kim's claims that "Joyner did nothing" to "protect [Kim's] interests" amount to

nothing more than conclusory allegations of ineffective assistance, which do not raise a constitutional issue. *See Green*, 160 F.3d at 1042 ("Mere conclusory allegations in support of a claim of ineffective assistance are insufficient to raise a constitutional issue").

And Kim's challenges to Joyner's representation during the investigation fail for another reason – Kim cannot show prejudice. Kim claims that, because Joyner failed to secure immunity before his proffer sessions, the government was able to use his inculpatory statements "as a basis for the charges" here. Dkt. No. 2 at 15. Yet the record makes clear that the government had already built its case against Kim before he sought to mitigate his criminal exposure by proffering to the government. *See* Dkt No. 10 at 7 ("At the conclusion of the meeting, Special Agent Lanier informed me that Mr. Kim was untruthful and that Mr. Kim was attempting to shift the blame to his co-defendants and minimized his involvement."). And he fails to point to a single inculpatory statement that he gave during his proffer that resulted in a charge in this case. *But cf. United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 74 at 11 (describing Kim's earlier proffer sessions – in an unrelated investigation – that "ended when [Kim] was arrested by the Dallas Police Department for continuing fraudulent activities," which informed the government's position here that "because of the circumstances of [Kim's] first proffer session that ... nothing that he said would be able to be taken at face value and he would have to provide document proof before he would be given credit for anything.").

Kim cannot show that his proffer statements formed the basis for these criminal

charges, and the record does not support Kim's allegation that Joyner's poor performance throughout the proffer process caused Kim to incriminate himself.

Similarly, Kim asserts that Joyner was ineffective because he failed to ensure that Kim had his rights read to him before the proffer. *See* Dkt. No. 2 at 15. Yet Kim does not even allege, or offer any facts to show, that he would have limited his proffer statements – or refused to participate altogether – if only he had been advised of his rights.

In sum, the Court should reject Kim's conclusory challenges to Joyner's assistance during the government's investigation.

Kim next alleges that Joyner failed to advise him that a guilty plea would almost certainly cause him to be removed from the United States. *See* Dkt. No. 2 at 18. Counsel's failure to advise a lawful permanent resident alien of likely deportation consequences can constitute deficient performance. *See Padilla v. Kentucky*, 559 U.S. 356, 369 (2010).

But Kim is entitled to no relief on his *Padilla* claim because he has not alleged prejudice. "To avoid summary dismissal and obtain [an evidentiary] hearing," Kim must "allege a non-frivolous prejudice claim." *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016); *see also Kayode*, 777 F.3d at 724-25 (discussing the *Strickland* standard in the context of a *Padilla* claim). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 692. So Kim must set out facts to show that, had Joyner advised him of his immigration consequences, he

would have pleaded not guilty and insisted on going to trial. *See Aeby v. United States*, 409 F.2d 1, 1 (5th Cir. 1969) ("The movant under section 2255 must allege specific facts which, if true, would constitute reversible error; otherwise, the district court must deny the motion to vacate.").

But Kim has not even alleged that much. He makes no claim that he would have not pleaded guilty and proceeded to trial if only Joyner had warned him of the immigration consequences stemming from his guilty plea. Kim's declaration is likewise silent as to any impact Joyner's alleged ineffective assistance had on the outcome of this proceeding.

And the only record evidence on this point shows that Kim was aware of the immigration consequences before he entered a guilty plea: Kim fled the Northern District of Texas before he was re-arraigned, telling agents upon his arrest that he wanted to avoid being removed from the United States after prison. Nevertheless, Kim was returned to this district and then pleaded guilty at his re-arraignment hearing.

Because Kim has failed to even "allege a non-frivolous prejudice claim," the Court should deny claim (7). *See Batamula*, 823 F.3d at 240.

Kim also argues that Joyner misled and coerced him into entering an unknowing and involuntary plea by failing to effectively communicate with Kim, whose native language is Korean, *see* Dkt. No. 2 at 11-12, and by forcing him into pleading guilty at the "onset of the case" in an effort to sweep counsel's poor performance under the rug, *see id.* at 16 (arguing that "Joyner was trying [to] rush [Kim] through the system before it became known that [Joyner's] actions seriously violated his client's rights.").

These claims merit no relief for at least two reasons.

First, Kim makes no attempt to show prejudice. He does not allege that, if Joyner had communicated more effectively or further explained the guilty plea process, Kim would have pleaded not guilty and insisted on going to trial. His failure to even allege prejudice is fatal to these ineffective assistance claims. *See Batamula*, 823 F.3d at 240.

Second, Kim's allegations – taken together and treated as true – amount to nothing more than a claim that he entered an unknowing guilty plea. Yet Kim's sworn statements at his re-arraignment hearing contradict his Section 2255 allegations. Kim swore to the Court that he understood that the Constitution afforded him various rights – including the right to a trial, the right to counsel, the right to compel and cross-examine witnesses, and the right to appeal – and that, if he pleaded guilty, he would waive those rights and stand convicted of Count 1 of the information. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 73 at 5-6. (acknowledging that if he pleaded guilty, Kim would stand "convicted of the offense charged by Count 1 of the information" and that he "[understood] the consequences of pleading guilty."). Kim further swore that he understood that his conviction "could result in deportation and adversely affect [his] ability to ever become a U.S. citizen" and that no one, including Joyner or the Court, could "predict what the specific consequences of a guilty plea would be on [his] legal status in the United States." *Id.* at 13-14. Kim also swore that he understood the role of the advisory United States Sentencing Guidelines and that no one, including the Court, could predict what Kim's sentence would be before his

sentencing hearing. *See id.* at 6-7. And he swore that he understood the elements of the charge against him and was, in fact, guilty of that crime. *See id.* at 11-13.

Kim's "[s]olemn declarations in open court" – which show that his plea was knowing and voluntary – "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Soliz,* 359 F. App'x 466, 470 (5th Cir. 2009) ("Thus, a defendant ordinarily may not refute his sworn testimony at a plea hearing while under oath."). To overcome that presumption, he must "produce[] independent indicia of the likely merit of [his] allegations," such as "one or more affidavits from reliable third parties." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998); *see also, e.g.*, *United States v. Perez*, 227 F. App'x 357 (5th Cir. 2007) (concluding that two affidavits – which described independent accounts with credible details and adequate specificity – were sufficient to support the movant's allegations and warrant an evidentiary hearing). Because Kim has offered no such reliable evidence, he cannot successfully assert here that his guilty plea was unknowing or involuntary. *Cervantes*, 132 F.3d at 1110; *see also Kim*, 623 F. App'x at 264 ("Nothing about the circumstances surrounding the plea indicate [Kim] lacked 'a full understanding of what the plea connote[d] and its consequence.'") (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). Kim cannot succeed on a claim that Joyner misled him into entering an unknowing and involuntary plea.

The Court should deny claims (1) and (5).

Claim (6) – that Joyner was suspended from the practice of law when Kim retained him in this case, which created a "conflict of interest [that overshadowed]

everything that Attorney Joyner did in [Kim's] case from that point forward, Dkt. No. 2 at 17-18 – is contradicted by the record.

The Court takes judicial notice – based on information from the State Bar of Texas – of the fact that Joyner was suspended from practicing law in the State of Texas from August 15, 2001 through August 14, 2006. *See* STATE BAR OF TEXAS, https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=174165 (last visited June 25, 2018); *see also, e.g.*, *Hubbard v. Midland Credit Mgmt.*, No. 4:13-cv-112-Y, 2013 WL 6027899, at *4 & n.4 (N.D. Tex. Nov. 13, 2013) (taking judicial notice – under Federal Rule of Evidence 201 – of information on the State Bar of Texas website). But Joyner's suspension ended before Kim ever retained him. *See* Dkt. No. 2 at 28 (claiming that Kim retained Joyner on unrelated matters in 2007). And the government did not begin this investigation into Kim until 2009 – three years after Joyner's suspension ended. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 28 at 5. Because Joyner had completed his suspension before the government began to investigate Kim, Kim cannot show that Joyner represented him in this case while under suspension. And so the Court should deny claim (6).

Kim also alleges that Joyner took $10,000 in exchange for a promise to obtain United States citizenship for Kim but that Joyner "failed to produce the United States citizenship" and kept Kim's money. *See* Dkt. No. 2 at 18. Kim's claim fails as conclusory. He fails to identify any of Joyner's acts or omissions that were fatal to his citizenship application. It is not enough to claim that Joyner failed to achieve the

desired result.

And Kim's allegations – even if treated as true – present no grounds for overturning his criminal conviction in this Section 2255 proceeding. Kim trains his conclusory attack on his counsel's performance in an altogether different proceeding – Joyner's failure to secure Kim citizenship. Kim has offered no link between that representation and his decision to plead guilty to a criminal information charging him with laundering money. As for prejudice, Kim similarly fails to explain how counsel's performance in the immigration matter impacted these criminal proceedings.

The Court should reject claim (8).

In claims (9) and (10), Kim urges that Joyner provided ineffective assistance by failing to give Kim's client file to Kim or attorneys Woodward or Yi.

Kim's allegations cannot form the basis for Section 2255 relief because Kim has not shown prejudice. Kim acknowledges that Woodward and Yi had access to all of the Court's records in this criminal proceeding, and Kim fails to identify what additional information was contained in Joyner's file. More critically, Kim fails to explain how any such information would have improved Woodward's or Yi's sentencing arguments. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (rejecting the movant's claim where he "has been unable to show what further investigation would have revealed and how it would have helped him."). Instead, Kim asserts that Woodward and Yi were unable to counsel him so that he could enter a knowing and voluntary plea. *See* Dkt. No. 2 at 22 (arguing that Woodward and Yi did "not have all the information themselves" and asking "how could an attorney properly inform [Kim], for his plea to

-13-

be knowingly and voluntarily entered, if they did not have 5 years worth of information?"). But Kim entered his guilty plea while Joyner was still his lawyer – before he hired Woodward or the Court appointed Yi. Neither Woodward nor Yi were responsible for counseling Kim regarding his guilty plea, so Joyner's failure to give them Kim's file could not have impacted the voluntariness of his plea.

The Court should reject claims (9) and (10).

Performance of Woodward and Yi

Kim alleges that he replaced Joyner with Woodward because Woodward promised to file a motion to withdraw Kim's guilty plea, and he claims that Woodward provided ineffective assistance when he failed to do so. *See* Dkt. No. 2 at 13; *see also id.* at 11 ("There was also [language] communication problems with Attorney Woodward," which "prevented [Kim] from being able to withdraw his guilty plea."). Kim is entitled to no relief on that claim of ineffective assistance of counsel, however, because he has not alleged any prejudice stemming from Woodward's failure to move to withdraw the plea.

Nor has Kim shown prejudice – that is, a substantial likelihood that the Court would have granted a motion to withdraw. *See McElhaney v. United States*, Nos. 3:07-cv-191-L & 3:03-cr-370-L (1), 2009 WL 54256, at *21 (N.D. Tex. Jan. 8, 2009) (concluding that the Section 2255 movant's failure to establish *Hill* prejudice was fatal to his claim for relief predicated on counsel's failure to move to withdraw a guilty plea); *see also United States v. Deem*, Nos. 16-cv-691 & 13-cr-149, 2018 WL 1915081, at *7 (W.D. La. Apr. 23, 2018) (denying ineffective assistance claim where the movant could

not show prejudice from counsel's refusal to file a motion to withdraw a guilty plea).

Once the Court has accepted a criminal defendant's guilty plea and adjudged the defendant guilty, the defendant has no absolute right to withdraw his guilty plea before he is sentenced. *United States v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015). Rather, a district court is vested with broad discretion to allow, or not, a defendant to withdraw his guilty plea. "The standard for determining whether or not a defendant may withdraw his guilty plea prior to sentencing is wether 'for any reason the granting of the privilege seems fair and just.'" *United States v. Carr*, 740 F.2d 339, 343 (5th Cir. 1984) (quoting *United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir. 1981)). In applying that standard, a district court should consider:

> (1) whether or not the defendant has asserted his innocence; (2) whether or not the government would suffer prejudice if the withdrawal motion were granted; (3) whether or not the defendant has delayed in filing his withdrawal motion; (4) whether or not the withdrawal would substantially inconvenience the court; (5) whether or not close assistance of counsel was available; (6) whether or not the original plea was knowing and voluntary; and (7) whether or not the withdrawal would waste judicial resources; and, as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion.

*Carr*, 740 F.2d at 343. "These '*Carr*' factors 'are considered for the totality of the circumstances, and the district court is not required to make a finding as to each individual factor." *United States v. Herrod*, 595 F. App'x 402, 409 (5th Cir. 2015) (quoting *United States v. McKnight*, 570 F.3d 641, 645-46 (5th Cir. 2009)). "[T]he defendant has the burden of proving the withdrawal is justified." *Carr*, 740 F.2d at 344.

In Kim's case, Judge Boyle accepted his guilty plea on July 30, 2013, *see United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 24, and Kim alleges that "Woodward was retained in August of 2013," Dkt. No. 2 at 13.

Kim has failed to show a substantial likelihood that, had Woodward moved to withdraw Kim's guilty plea, the Court would have granted a motion to withdraw.

Regarding the first *Carr* factor, Kim has never claimed to be actually innocent of the charge to which he pleaded guilty. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 74 at 16 ("I am not saying I am not guilty, but I cannot admit guilt to everything there on the factual resume."). Instead, Kim complains that the factual resume and his presentence report held him responsible "for actions and events that [Kim] had no part of." Dkt. No. 2 at 14. Because Kim has never disputed his guilt to the charge, this factor likely would have weighed against permitting him to withdraw his guilty plea. *See, e.g.*, *Herrod*, 595 F. App'x at 409 (according little weight to the defendant's bald protestations of innocence where the record was clear "that it was the unexpected length of the PSR's proposed sentence – not any revelation with respect to his guilt or innocence – that prompted [the defendant] to move to withdraw his plea"); *see also United States v. Rosales*, 281 F. App'x 424, 425 (5th Cir. 2008) (per curiam) (stating that the defendant did not "assert his innocence" where he "merely objected to the quantity of drugs attributed to him for sentencing purposes").

The fourth and seventh *Carr* factors likely would have also weighed against Kim. Kim had already expended considerable judicial resources by signing a plea

-16-

agreement but then fleeing the Northern District before he was re-arraigned. *See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 9 (issuing bench warrant for Kim's arrest). Moreover, because the government had strong evidence of Kim's guilt, and because Kim has never disputed that he is guilty of the crime to which he pleaded guilty, it appears unlikely that he would have proceeded to trial. And permitting him to withdraw his guilty plea so that he could engage in further attempts to simply limit his sentencing exposure would waste the Court's finite resources.

Because Kim had the benefit of close assistance of counsel in relation to his plea, the fifth *Carr* factor likely would have also weighed against him. Kim's "attorney – privately retained counsel he had chosen – negotiated a plea agreement on his behalf." *Herrod*, 595 F. App'x at 411. "Importantly, at his plea hearing, [Kim] stated that he was satisfied with [Joyner's] assistance" – and that he and Joyner had discussed his options, his plea, and his potential sentence under the advisory guidelines. *Id.*; *see also See United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 73 at 8-9. In light of those circumstances, the Court likely would have counted the fifth *Carr* factor against allowing Kim to withdraw his plea.

The sixth *Carr* factor concerns whether Kim's guilty plea was knowing and voluntary. As discussed in detail above, Kim's sworn statements to the Court at his re-arraignment hearing established that his plea was knowing and voluntary. So the sixth *Carr* factor, too, likely would have weighed against granting a motion to withdraw.

There is no record evidence to assess the second *Carr* factor – prejudice that the government would suffer if Kim were allowed to withdraw his plea. That is so because

-17-

the government has never had occasion to express its position on prejudice. Kim did not move to withdraw his guilty plea before sentencing, and he has not argued here that the Court would have allowed him to do so under *Carr*. In any event, the absence of prejudice to the government is not dispositive. *See Herrod*, 595 F. App'x at 410 (explaining that "even 'the absence of prejudice to the Government does not necessarily justify reversing the district court's decision to deny a motion to withdraw a guilty plea'") (quoting *McKnight*, 570 F.3d at 649).

And, based on the totality of the circumstances, Kim has not shown a substantial likelihood that the Court would have granted his motion to withdraw his guilty plea, even if Woodward had filed it. And so Kim is entitled to no relief on his claim predicated on Woodward's failure to move to withdraw Kim's guilty plea. *See McElhaney*, 2009 WL 54256, at *21.

Kim also complains that Yi was ineffective for failing to move to withdraw Kim's guilty plea. *See* Dkt. No. 2 at 12. That claim must also fail because Kim has not alleged prejudice, and he cannot show it for the reasons set out above.

The analysis of whether there is a substantial likelihood that the Court would have granted a motion to withdraw Kim's guilty plea, had Yi filed one, is identical to the above analysis with one notable distinction. The third *Carr* factor – Kim's delay in filing a motion to withdraw – would have weighed more heavily against permitting Kim to withdraw his guilty plea. *Compare Carr*, 740 F.2d at 345 (stating that a motion to withdraw was "not promptly filed" where "[t]he defendant waited twenty-two days [after pleading guilty] before filing his motion."). The Court appointed Yi to represent

-18-

Kim almost eleven months after it accepted Kim's guilty plea. *Compare United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. No. 24 (accepting Kim's plea on July 16, 2013), *with United States v. Kim*, 3:13-cr-50-B (01) (N.D. Tex.), Dkt. 56 (appointing Yi to represent Kim on June 5, 2014). Had Yi moved – at that time – to withdraw Kim's guilty plea, the Court would have almost certainly denied his motion in light of the lengthy delay and the *Carr* factors discussed above. *See Herrod*, 595 F. App'x at 412 (holding that a nine-month delay before moving to withdraw a guilty plea was the "most significant" of the *Carr* factors).

The Court should deny Kim's claims (2) and (3).

Kim finally claims that both Woodward and Yi were ineffective for failing to warn him of the immigration consequences of pleading guilty. *See* Dkt. No. 2 at 18 ("Mr. Woodward [and] Mr. Yi ... provided ineffective assistance of counsel by failing to inform [Kim] of the possible deportation effects of pleading guilty."). When Kim pleaded guilty, he was represented by Joyner; Woodward and Yi had not yet begun to represent Kim. Because Woodward and Yi were not yet Kim's lawyers, neither can be deemed ineffective for failing to warn Kim of the immigration consequences that might flow from pleading guilty.

**Recommendation**

The Court should deny Kim's Section 2255 motion with prejudice as meritless.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 9, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE